UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LARRY SMITH,                          :
                                      :CIVIL ACTION NO. 3:16-CV-1675
         Plaintiff,                   :
                                      :(JUDGE CONABOY)
         v.                           :
                                      :
CREDIT ACCEPTANCE                     :
CORPORATION,                          :
                                      :
         Defendant.                   :
                                      :

_____

## **MEMORANDUM**

Here we consider the Motion of Defendant, Credit Acceptance Corporation, to Compel Arbitration and to Dismiss or, in the Alternative, to Stay All Proceedings (Doc. 5). For the reasons discussed below, the Court concludes the motion to compel is properly denied and the case will be stayed pending the outcome of arbitration.

## **I. Background**

Plaintiff filed this action on August 12, 2016, asserting claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").[1] (Doc. 1 at 1.) Plaintiff specifically alleges that Defendant began calling him on his cellular phone in 2014 and, despite his attempts to stop the calls,

---

[1] In Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss and Compel Arbitration (Doc. 7), Plaintiff states that his complaint alleges violations of the TCPA. (Doc. 7 at 1.)

the calls continued and he received repeated harassing calls on his cellular phone between August 2015 and August 2016 in Defendant's attempt to collect an alleged debt on his auto loan.  (Doc. 1 at 3.)  Plaintiff also alleges that Defendant used an automatic telephone dialing system and pre-recorded messages and the calls were not made for emergency purposes.  (Doc. 1 at 4.)

    In its supporting brief, Defendant asserts that Plaintiff entered into a valid agreement to arbitrate with Defendant and Plaintiff's claims are within the scope of the Agreement to Arbitrate.  (Doc. 6 at 6-21.)  Defendant states that Plaintiff entered into a Retail Installment Contract ("RIC") with Gaughan Auto Store for the purchase of a used car in June 2014, Gaughan assigned the RIC to Defendant, and Plaintiff defaulted soon after entering into the RIC by failing to make all of the required monthly payments.  (Doc. 6 at 6.)  Defendant also avers the following: the first page of the RIC conspicuously emphasizes the existence of the Agreement to Arbitrate; a notice on the following page advises the buyer not to sign the contract in blank, that the buyer is entitled to an exact copy of the contract he signs, and he should keep it to protect his legal rights; and, below this notice and Plaintiff's signature, the following language appears in bold type: "You agree to the terms of this Contract and acknowledge that You have received a copy of this Contract with all blanks filled in and that You have read it and understand it."  (Doc. 6 at 7-8

(citing Dickson-Rekasi Aff., Ex. A [Doc. 6 at 27-30]).)  Defendant summarized the Agreement to Arbitrate contained in the RIC as follows:

> [T]he Agreement to Arbitrate provides that Plaintiff or Credit Acceptance may elect to arbitrate "Disputes" (which "have the broadest meaning possible") either before or after litigation has begun; if and when arbitration is elected by either Plaintiff or Credit Acceptance, then there is no right to pursue Disputes in this (or any) Court; the RIC evidences a transaction in interstate commerce; and arbitration is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.

(Doc. 6 at 9 (citing RIC ppg. 4-5 [Doc. 6 at 30]).)  Defendant also points out several ways in which the Agreement to Arbitrate is designed to protect consumers, including that "Plaintiff had the absolute right to reject the Agreement to Arbitrate, with no consequence to the remaining terms of the RIC."  (Doc. 6 at 10.)  Specifically, the Right to Reject the Agreement allows the buyer to reject the Arbitration Clause by mailing a written rejection notice to a specified address within thirty days of the date of the Contract. (Doc. 6 at 10.)   Defendant notes that Plaintiff did not exercise his right to reject the Agreement to Arbitrate as it did not receive the required notice from Plaintiff.  (*Id.*)

In support of its motion, Defendant provides the Affidavit of Andrea Dickson-Rekasi, a Legal Assistant at Credit Acceptance Corporation, with the RIC attached as a supporting exhibit.  (Doc. 6 at 24-30.)  Ms. Dickson-Rekasi states that Plaintiff Larry Smith

3

and Elizabeth Smith entered into the RIC on June 24, 2014, with Gaughan Auto Store for the purchase of a 2005 Jeep Liberty, and Gaughan Auto Store assigned all right, title, and interest in the RIC to Credit Acceptance, the RIC contains an Agreement to Arbitrate, and Credit Acceptance never received a request, written or otherwise, from Plaintiff to opt out of the Arbitration Clause. (Doc. 6 at 24-25.)

## **II. Discussion**

As noted above, with this motion, Defendant asserts that Plaintiff's claims for improper phone calls are within the scope of the binding RIC and Agreement to Arbitrate. (Doc. 6 at 11.) Plaintiff avers that Defendant's motion should be denied because he has stated a claim under the TCPA, Defendant has failed to meet its burden to establish the existence of a binding and enforceable arbitration contract, and any existing arbitration contract between Plaintiff and Defendant is unconscionable. (Doc. 7 at 1-2.)

Under the Federal Arbitration Act, a "written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2; *see also* 42 Pa. C.S. § 7301, *et seq.* (Pennsylvania's Uniform Arbitration Act). Federal and Pennsylvania law strongly favor enforcement of arbitration provisions. *Howsan v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 82 (2002); *Dodds v. Pulte Home Corp.*,

4

909 A.2d 348, 351 (Pa. Super. 2006) ("It is hornbook law that Pennsylvania favors the enforceability of agreements to arbitrate."). The Third Circuit has explained that any doubts about the arbitrality of a matter should be resolved in favor of arbitration. *See Brayman Construction Corp. v. Home Insurance Company*, 319 F.3d 622, 625 (3d Cir. 2003).

"To determine whether the parties agreed to arbitrate, we turn to 'ordinary principles that govern the formation of contracts.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Contract formation under Pennsylvania law requires "(1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Id.* (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)). Under Pennsylvania law, a motion to compel arbitration can only be granted if the court determines that "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Id.* (citing *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 283 n.3 (Pa. Super. 2005)).

The Court of Appeals for the Third Circuit clarified the appropriate standard district courts are to apply when determining whether an agreement to arbitrate was actually reached in *Guidotti*

*v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013).  The clarification was necessary because some cases supported "'the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted,' under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Guidotti*, 716 F.3d at 771 (quoting *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir. 2004)).  Other cases "said, however, 'that when considering a motion to compel arbitration . . . [a district court] should' employ 'the standard used . . . in resolving summary judgment motions pursuant to [Rule 56 of the Federal Rules of Civil Procedure].'"  *Id.* (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 & n.9 (3d Cir. 1980) (alternation in *Guidotti*); citing *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009)).  After noting that inconsistent pronouncements on the applicable standard for evaluating motions to compel arbitration "are perhaps explained by the FAA [Federal Arbitration Act], and by the values underlying contract interpretation," *Guidotti* summarized the reconciliation of the split pronouncements.

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. . . .  But if the complaint and its supporting documents are

6

>            unclear regarding the agreement to arbitrate,
>            or if the plaintiff has responded to a motion
>            to compel arbitration with additional facts
>            sufficient to place the agreement to
>            arbitrate in issue, then the parties should
>            be entitled to discovery on the question of
>            arbitrability before a court entertains
>            further briefing on the question. . . . After
>            limited discovery, the court may entertain a
>            renewed motion to compel arbitration, this
>            time judging the motion under a summary
>            judgment standard.

716 F.3d at 776 (internal quotations omitted).

   Here the Court has no trouble concluding that a valid agreement to arbitrate exists and the dispute falls within the scope of that agreement.  *Kirleis,* 560 F.3d at 160.  The terms of the Agreement to Arbitrate in the RIC are broad, evidence presented by Defendant shows that Plaintiff signed the RIC which contains a conspicuous Agreement to Arbitrate, and Ms. Dickson-Rekasi's Affidavit states that Defendant did not receive a request from Plaintiff to opt out of the Arbitration Clause.  (Doc. 6 at 8-9, 25, 27-30.)  Plaintiff's conclusory statements that Defendant has failed to meet its burden regarding the existence of an arbitration contract and that any existing arbitration clause is unconscionable (Doc. 7 at 2, 5, 7, 10) fall far short of meeting his burden of challenging the Agreement to Arbitrate.  *See*, *e.g.*, *Shearson/American Express v. McMahon*, 482 U.S. 220, 227 (1987).  Despite the inclusive language of the agreement, Plaintiff maintains that the terms of the contract are completely separate and irrelevant to Plaintiff's TCPA claim.  (Doc. 7 at 10.)  He does

7

so without citation to authority and without providing any argument or factual support for his conclusive statement. Therefore, Plaintiff has presented no meaningful challenge to Defendant's argument (supported by the RIC's plain language) that the Agreement to Arbitrate is valid and the dispute at issue here falls within its scope.[2]

The remaining issue is whether this case should be dismissed or stayed pending the outcome of arbitration. (*See* Doc. 6 at 20; Doc. 7 at 10.) Several circuits have held that litigation in which all claims are referred to arbitration may be dismissed. *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *Green v. Americtech Corp.*, 200 F.3d 967,

---

[2] Although Plaintiff states that the summary judgment standard is appropriate in determining arbitrability in a motion to compel arbitration, Plaintiff does not acknowledge the *Guidotti* analysis set out in the text or provide any argument in support of his assertion. (*See* Doc. 7 at 4.) The Court concludes a Rule 12(b)(6) standard is appropriate here because the claims set out in the Complaint arise from a contract between the parties (the RIC) which contains an enforceable arbitration clause. *See Guidotti*, 716 F.3d at 776. Although Plaintiff mentions neither in his Complaint (Doc. 1), the claimed violations of the FDCPA and TCPA took place because of the contract for the purchase of an automobile and Plaintiff's failure to pay monies due thereunder, and Defendant's status as a "debt collector" identified in the Complaint (Doc. 1 ¶ 9) is related to Plaintiff's failure to abide by the terms of the contract. Therefore, although Plaintiff has not stated specific facts acknowledging the RIC and Agreement to Arbitrate in his Complaint, their existence is sufficiently apparent for this motion to be considered under the Rule 12(b)(6) standard without discovery's delay in the absence of any meaningful argument from Plaintiff that additional facts place the agreement to arbitrate in issue. 716 F.3d at 776.

973, (6th Cir. 2000); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988).  However, the Third Circuit decided otherise in *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004), concluding that the text of § 3 of the FAA requires a stay of proceedings if requested by a party.  Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing that the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  *Lloyd* explained that

> the plain language of § 3 affords a district no discretion to dismiss a case where one of the parties applies for a stay pending arbitration.  The directive that the Court "shall" enter a stay simply cannot be read to say that the Court shall enter a stay in all cases except those in which all claims are arbitrable and the Court finds dismissal to be the preferable approach.

369 F.3d at 269.

Here Defendant first asserts that the case should be dismissed with prejudice and, alternatively, stayed pending the final outcome of arbitration.  (Doc. 6 at 20.)  Plaintiff contends that the

9

proceedings must be stayed rather than dismissed if the Court finds the matter should be referred to arbitration.  (Doc. 7 at 10.) Given the Third Circuit holding in *Lloyd*, which was reiterated in *Devon Robotics, LLC, v. DeVidema*, 798 F.3d 136, 143-44 (3d Cir. 2015), and Plaintiff's request that the case be stayed, we conclude staying the matter pending the final outcome of arbitration is the proper course even though all claims are referred to arbitration.

### III. Conclusion

For the reasons discussed above, this case will be stayed pending the final outcome of arbitration proceedings.  Because the arbitration may resolve all issues between the parties and make any further proceedings in this Court unnecessary, the Clerk of Court will be directed to close the case administratively.  If arbitration does not resolve all issues, then either party may move the Court to reopen the case.  An appropriate Order is filed simultaneously with this action.

                                            S/Richard P. Conaboy
                                            RICHARD P. CONABOY
                                            United States District Judge

DATED: January 11, 2017